Battle, J.
 

 When this cause was before us at the last term, the only question upon which we were called upon to give an instruction was, as to the rights of the defendant Johnston, under the deed of trust mentioned in the pleadings as having been made to the defendant Pescud, and the defendant Fowle. We then held that he was bound to make an election, and that Cooke’s creditors would be entitled to the residue of both funds. A petition to rehear the decree then made, is now filed by certain creditors of Cooke, intended to be secured by another deed in trust, made by Cooke to the defendant Pescud. In connection with this, by a general agreement among the counsel, for the various parties, the case is brought on to be heard upon the .merits of the respective claims, set up by each party to the fund, now in the hands of the defendant Eowle.
 

 There is some irregularity in this mode of proceeding, but as it is very desirable to all parties to have their respective rights ascertained, and the fund distributed, we have made no objection to having the cause brought on for argument now, and wo are prepared to give an opinion upon all the points which are properly before us, and which it is necessary for us now to decide.
 

 The main question is, what are the rights of the defendant Johnston under the deed in trust, executed for the benefit of him and others, by the defendant Cooke, to the defendant
 
 *10
 
 Pescnd, on the 24th day of July, 1851, by which he conveyed to the trustee all his interest in the “ Manteo Paper Mills,” on Crabtree creek, in the county of Wake, owned by James E. Jordan & Co.; of -which firm the defendant Cooke -was a partner.
 

 A similar question is presented by the deed, in trust, executed by the defendant, James E. Jordan, on the 7th of November, 1851, to the defendant, William H. Jones, of all his interest in the same Mills, for the benefit of the defendant Buffalow, and others.
 

 Eor the defendants, who claim under these deeds of trust, it is contended that the assignments by Cooke and Jordan, respectively, conveyed the interest of each in the partnership effects, at the date of the deeds; that the said partnership was then solvent, and that they have the right to claim the machinery and other things, or their value, as of that time, though they were subsequently, conveyed by James F. Jordan
 
 &
 
 Co., to the Corporation, the Neuse Biver Manufacturing Company, which, by a change of name, afterwards became the “ Manteo Manufacturing Company.” On the contrary, the defendants, who claim under the deed made by the “Manteo Manufacturing Company” to the defendant Eowle, contend that as the defendants, Johnson, Buffalow, and others, did not insist upon a dissolution of the partnership at the time of the assignments made for their benefit, but instead thereof, permitted the partnership business to be carried on with their knowledge and concurrence, they can claim the value of the interests of the said Cooke and Jordan, only as they existed at the time when they came forward with their claims, to have the business stopped, and their rights ascertained, and secured to them.
 

 - It is difficult to resist the force of this latter view of the case. There can be no doubt, that the general rule is, that an assignment of the interest of one partner in a firm, either absolutely, or as a security for a debt, is a dissolution of the copartnership, if the assignee insist upon his right to have the business closed, and the share of each partner ascertained and
 
 *11
 
 paid to him, after the payment of all the debts of the copartnership. "Without citing other authorities, the case of
 
 Marquand v. N. Y. Manufacturing Company,
 
 17th John. Rep. 525, is directly in point, and the reasons, upon which the rule is founded, are there stated and explained. That was the case of an assignment as a security for a debt, and in that respect, is like the one which we are now considering. But there is nothing, either in the decision itself, or in the reasoning by ■which it is supported, which makes the assignment operate to dissolve the partnership against the will of the assignee. lie may, if he choose, permit the business to go on in its ordinary course, but if he do, his security will bo liable to its fluctuations, by which, if the business be prosperous, his security will be enlarged, but diminished, or lost, if it be adverse. That would certainly be the case of stock in an incorporated compan3r, pledged for securing a debt; and it seems to us, that the rule must be the same, with regard to the interest of a partner, where the assignee concurs in the continuance of the business. If there be a loss to the assignee, by such a proceeding, he cannot complain of it; for, to him the maxim applies,
 
 volunti non fit injuria.
 
 That the
 
 cestuis que trust,
 
 for whose benefit the deeds in question were executed, concurred in the continuance of the partnership business, is manifest from the deeds themselves. Indeed, they show on their faces, that they were made for the very purpose of enabling the partners to carry on the business. The result is, that the
 
 cestuis que trust,
 
 can only claim the value of the interests of the respective partners in the
 
 “
 
 Manteo Manufacturing Company,” at the time when that corporation made an assignment of its effects for the payment of its debts, and that value ■will be whatever remains after the payment of such debts.
 

 We have considered the operations of the “Neuse Eiver Manufacturing Company,” which, by a change of name, became the
 
 “
 
 Manteo Manufacturing Company,” as a continuation of the business of James F. Jordan
 
 & Go.,
 
 so far as the
 
 cestuis que trust,
 
 under the deeds above medtioned, from Cooke and Jordan to Pcscud and Jones, are concerned; be
 
 *12
 
 cause, with their knowledge, and without any objection on their part, James F. Jordan & Co., by a deed, dated on the 2nd day of February, 1854, assigned and transferred to the said Nense River Manufacturing Company, “ all the machinery, stock, tools, and personal property of every description,” which they owned in the paper mills, on Crabtree creek.
 

 This view of the case, makes it necessary that the exceptions of the defendant Pescud, who claims under the deed from the Manteo Manufacturing Company to Fowle, should be sustained; and as it is understood that the debts secured by that deed, will absorb all the funds in the hands of Fowle, it is useless to consider the questions discussed at the bar, as to-whether the deeds to Pescud and Jones, were sufficient to cover what is called, in the civil law, the novation of the debts thereby intended to be secured to the defendant Johnston, and the release or payment of the debts intended to be secured to the defendant Buffalow.
 

 Per Curiam. Decree accordingly.