Upon the death of B. F. Jennings, his wife instituted this suit. The insurance company paid the money ($5,000) into court — and the question presented to Starbuck, J., at December Special Term, 1899, of *Page 30 
PASQUOTANK, was who was entitled to the money. The plaintiff claimed that she was entitled on the ground that her assignment of the policy was made without the written consent of her husband.
The defendant claimed that he was entitled, for the reason that the signature of the husband, as witness, to her assignment amounted to his written assent.
His Honor instructed the jury that the subscribing by the husband as a witness was not a consent in writing, as the law required.
The defendant excepted. Verdict for the plaintiff. Judgment accordingly. Appeal by defendant.
The plaintiff, Sarah E. Jennings, on 23 June, 1884, was the wife of B. F. Jennings, and continued to be such until the time of his death on 11 February, 1899.
On said 23 June, 1884, the said B. F. Jennings took out a policy of insurance upon his own life, for the benefit of his wife, in the sum of $5,000.
On 22 April, 1897, the plaintiff, Sarah E., made, executed and delivered to the defendant, J. L. Hinton, the following written assignment, which her husband, B. F. Jennings, witnessed:
"ELIZABETH CITY, N.C. 22 April, 1897.
"For value received I hereby assign and set over to John L. Hinton all my right and interest in Benefit Certificate No. 73886 in the American Legion of Honor Insurance Company, the same being insurance on the life of my husband, Benjamin F. Jennings, dated 23 June, 1884, the said certificate or policy being the sum of $5,000, being for my benefit. The said Hinton to have the said $5,000 in the said policy absolute, with power at the death of the said Benjamin F. Jennings to collect the same, and apply it to his own use.
"SARAH E. JENNINGS. (Seal.)
"Witness: B. F. Jennings."
This statement presents the only point in the case necessary for (50) our consideration: Was this an assignment by the wife "with the written assent of her husband," as provided by Art. X, sec. 6, of the Constitution of this State? The court held that it was not, and so charged the jury, and to this the defendant Hinton excepted.
It has been suggested that the right to property was the right to dispose of it — the jus disponendi — and to hold that she could not convey. *Page 31 
without her husband's assent would be in violation of that principle of law. But to sustain this suggestion would be to hold that the Constitution was unconstitutional.
At common law, upon the marriage of a woman the whole of her personal property became that of her husband, and he had the sole right to dispose of the same, and this was the law in this State until the adoption of the Constitution of 1868. The husband paid the wife nothing for her property, thus acquired, but it became his, as one of his marital rights. The Constitution of 1868 abolished this fiction and rule of the common law, and said the wife's property should remain hers although she married; but to convey the same she must have the "written assent of her husband." Constitution, Art. X, sec. 6. This provision of the Constitution was an enabling act, giving the wife rights that she did not have at common law — the right to retain all her property, with the simple incumbrance that she could not convey it without the "written assent of her husband." This provision does not restrict her property rights, but greatly increases and enlarges them.
But it seems to us that this discussion is aside from the real point in this case, as we shall take the Constitution to be constitutional. So the question reverts to the original proposition: Did the plaintiff convey this policy of insurance to the defendant with the written (51) assent of her husband? In other words, was the simple fact that the husband witnessed the written assignment of the wife, by signing his name thereto, the "written assent of the husband?"
Had the husband not signed his name to the paper, though he may have negotiated the trade and received the consideration therefor, the conveyance (the assignment) would have been void (Walton v. Bristol,125 N.C. 519), because the husband wrote nothing. But where the wife signed a note as the surety of the husband, it was said by the Court that this would be sufficient to satisfy the requirements of law, as that the husband and wife both signed the note, and it must be presumed that the wife signed the note with the assent of her husband. In other words, signing his name to the paper was a writing, and his assent would be inferred. Farthing v. Shields, 106 N.C. 289. Upon a similar state of facts, where the wife signed as surety, the Court held the same doctrine, using this language: "It is also unnecessary that the assent of the husband should be signified by a separate clause. His execution of the paper jointly with his wife is a sufficient compliance with the law in this respect," citing Farthing v. Shields, supra; Jones v. Craigmiles,114 N.C. 613. Where a husband, as the agent of his wife, made a written statement in the name of his wife to obtain the purchase of goods, and five or six days thereafter the husband made a written guarantee for goods, it was held that the signing of the written statement *Page 32 
by the husband, as the agent of the wife, was a signing by the wife, and that his guarantee some days after was his written assent; that the guarantee was a sufficient writing to satisfy the demands of the law, and his assent would be inferred. Bates v. Sultan, 117 N.C. 94. (52) However violent this presumption may be, for the public good, it is presumed that all persons know the law. This being so, both the plaintiff and her husband knew that the wife could not dispose of this policy of insurance without the written assent of the husband; and knowing this, the wife signed the instrument "disposing" of the policy to the defendant Hinton, and the husband wrote his name as a witness to this disposition by the wife of her property. But from the transaction we think it may be reasonably inferred that they had actual knowledge that the wife could not convey the policy without the written assent of the husband — as it was not a transaction that required a subscribing witness for any purpose unless it was to meet this requirement — that it must be with the written assent of the husband. But be this as it may, the law presumed the knowledge.
From the logic of the decisions we have cited and the other cases cited in these decisions, it appears to us that there was error in this instruction — "that the fact that it appeared that the husband signed as a witness was not his written consent."
This doctrine may have been carried right far, but to hold that this was not the written assent of the husband would put us in conflict with what has been repeatedly held to be the law by this court.
Error. New trial.
Cited: Brinkley v. Ballance, post, 396; Rawls v. White, 127 N.C. 20;Jennings v. Hinton, 128 N.C. 214; Rea v. Rea, 156 N.C. 533; Butler v.Butler, 169 N.C. 596; Graves v. Johnson, 172 N.C. 179, 180, 181, 182. *Page 36 
(58)