W. H. TULLER, Appellant, v. G. W. LEAVERTON, LAFAY-
ETTE KNOWLES, HARRISON BLACKLEDGE, CORDELIA
I. BLACKLEDGE.

**Partnership:** SALE BY ONE PARTNER OF HIS INTEREST: FIRM DEBTS:
1 LIABILITY OF PARTNERS. A partner by consenting to a sale of his
copartners interest in firm property, and a substitution of the pur-
chaser as a member of the partnership, neither assumes the debts
of the old firm nor waives his right to have the indebtedness
satisfied from the firm property; nor does the purchasing partner
upon becoming a member of the firm assume its debts. And by
discharging firm debts from firm property one partner does not
incur any liability to his copartner or his grantee.

**Same.** Partnership property is not owned by the partners individ-
2 ually, nor has either one an exclusive right to possession of any
article or aliquot part thereof. The ownership and title are vested
in the firm, so that the sale of an interest by one partner
does not pass title to the property itself, but to a share therein
after payment of the partnership debts.

**Same:** DEEDS: DEPOSIT IN ESCROW: EQUITABLE LIENS. The deposit of a
3 deed intended as payment for one partner's interest in
the firm property, to be held in escrow until the firm debts are
paid, operates to hold delivery of the deed in abeyance; and in
case of nonpayment of the debts practically the only remedy
of the grantor is to withhold title to the land, as the deposit of
the deed is not security for anything the grantor might be called
upon to pay, or for anything that might be taken from the
assets of the firm. In fact the depositing of title deeds does
not create an equitable lien or mortgage.

*Appeal from Van Buren District Court.*—HON. FRANK W.
EICHELBERGER, Judge.

SATURDAY, JUNE 5, 1909.

ACTION for an accounting, etc., resulted in the dis-
missal of the petition. Plaintiff appeals.—*Modified* and
*affirmed.*

*Walker & McBeth* and *J. C. Calhoun,* for appellant.

*Work, Brown & Harlan* and *E. L. McCoid,* for appellees.

LADD, J.—Leaverton & Knowles, composed of G. W. Leaverton and Lafayette Knowles, owned a stock of hardware at Stockport. About April 1, 1905, Knowles exchanged his one-half interest in the stock to Harrison Blackledge for one hundred and twenty acres of land in Polk County, Mo. Upon invoicing half of the stock it exceeded in the value the price of the land by $276.03, and by arrangement between the parties Leaverton took this sum from Blackledge's share of the proceeds of sale and a like amount from his own, and applied the same, amounting to $552.06, on the indebtedness of Leaverton & Knowles. Blackledge did not assume such indebtedness, nor did he acquire its bills receivable or accounts. These were left with Leaverton, and he collected $352.62 therefrom, and applied this also on said indebtedness. But $2,448.60 of indebtedness was paid by Leaverton from the proceeds of subsequent sales from the stock. Knowles testified that Leaverton agreed to take the notes and accounts of the firm, and in consideration thereof discharge its debts, and he is somewhat corroborated by other witnesses. Leaverton denied this, and he is so strongly confirmed by the circumstances that we have no difficulty in concurring in the finding of the trial court that he had not entered into such an agreement. However, the deed of Blackledge to the Missouri land was deposited in a bank, as we think, to be held until the debts were paid, and it is not very material whether this was at the instance of Leaverton or Blackledge. In July, 1905, Tuller purchased Blackledge's interest in the business, assuming the indebtedness, and acquiring all of the seller's interest, and the name was changed to Leaverton & Tuller, who continued the business until the stock was exchanged for land in Kansas in March, 1906. Throughout the period men-

tioned Leaverton was the active partner in management of
the store, and, including the collections spoken of, received
$7,120.84. Of this amount he applied $3,352.28 on the
indebtedness of Leaverton & Knowles, and on bills and
expenses of the succeeding firms $3,509.36, or in ˙all
$6,862.64, leaving a balance of $258.20 to be accounted
for. He had withdrawn from the firm $69.29 more than
his partners, and to this should be added $72.36, owing
to a mistake in entering items amounting to $36.18 as a
credit instead of a ̇ debit. These items are inconsistent
with his testimony, and as no attempt to explain the dis-
crepancy is made in response to appellant's argument
asserting the mistake, and no explanation is apparent, the
correction should be made. This leaves a balance of
$399.85 in the hands of Leaverton, one-half of which, or
$199.93, he should pay Tuller. The latter, however, had
mortgaged his interest in the stock of goods, and it was
traded subject thereto, so that in that transaction Tuller
became indebted to Leaverton for $376.72, leaving a bal-
ance in Leaverton's favor of $176.79. This does not agree
with the computations made by appellant, but results from
necessary deductions from the record as presented in the
abstracts before us. As already noted, however, Leaverton
had used $2,448.60 from the proceeds of sales after the
transfer to Blackledge in the satisfaction of the indebted-
ness of Leaverton & Knowles, and Tuller demands judg-
ment against him for one-half of this amount.

While Leaverton knew of the sale of one-half of the
stock to Blackledge, and consented that the latter succeed
Knowles as a member of the copartnership, he did not
assume the debts of the old firm, nor did
he agree that the stock be transferred freed
from his right to have the partnership in-
debtedness satisfied therefrom. Indeed the
circumstance of placing Blackledge's deed
in escrow until the debts should be paid indicated a de-

.1. PARTNERSHIP:
sale by one
partner of his
interest: firm
debts: liability
of partners.

sign to the contrary. At most he did no more than consent to the purchase by Blackledge and his substitution as partner. This assent to a sale of a share in the assets did not waive his right to have the existing indebtedness satisfied from the property of the firm. *Chase v. Scott,* 33 Iowa, 309. He did not thereby part with his right as a partner to have the property so applied. *Stout v. Fortner,* 7 Iowa, 183. Nor did the purchaser, by the act of succeeding as a member of the firm, assume outstanding debts. Bates on Partnership, section 507.

Neither partner separately owns, nor has the exclusive right of possession of, any particular articles of partnership property or aliquot part thereof. The real ownership and legal title are vested in the firm, so that the sale of one-half of the stock did not pass title to the stock itself, but to such share as remained after the settlement of the partnership debts and settlement of partnership accounts. *Sloan v. Wilson,* 117 Ala. 583 (23 South. 145); *Daniel v. Crowell,* 125 N. C. 519 (34 S. E. 684); *Day v. Stafford,* 128 Mo. App. 438 (107 S. W. 433); *Doner v. Stauffer,* 1 Pen. & W. (Pa.) 198 (21 Am. Dec. 370); *Spurr v. Russell,* 59 N. H. 338.

2. SAME.

In 30 Cyc. 458, the law is accurately summarized: "Purchasers of the share of an individual partner can only take his interest. That interest, and not a share of the partnership effects, is sold, and it consists of the vendor's share of the surplus which remains after the payment of the partnership debts and the settlement of accounts between the partners. Such share is subject to the fluctuations of the firm's business, including firm debts subsequently contracted; and, if upon the winding up of the firm the transferring partner's interest has no pecuniary value, the transferee takes nothing by his transfer." Leaverton then rightly discharged the debts of Leaverton & Knowles from the partnership property, and thereby did not incur any liability to plaintiff.

Appellant contends, however, that judgment should have been entered against Knowles. But none was prayed. All sought was that plaintiff be subrogated to the rights **3. SAME: deeds: deposit in escrow: equitable liens.** of Blackledge in the deed, and that the money paid out as stated be established as a lien on the Missouri land. How this might be effected beyond the jurisdiction of the court is not explained. Moreover, the delivery of the deed was merely held in abeyance until the debts should be paid, and practically the only remedy of Blackledge, in event of nonpayment, was the withholding of title to the land. Aside from this the mere depositing thereof in escrow furnished no security for anything he might be called upon to pay, or which might be taken from the assets. Indeed the depositing of title deeds does not create an equitable lien or mortgage in this country. *In re Snyder,* 138 Iowa, 553. And as Blackledge had no lien on the land through the deposit of the deed in escrow, there was none to which plaintiff might be subrogated.

With the slight modification indicated, the judgment will be affirmed; each party to pay his own costs.—*Modified* and *affirmed.*